UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONA CAPUANO, <br> JOHNNY CUSTER, <br> ELIZABETH PAIGE GOAD, <br> ALISON MELE, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY & COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:22-cv-01651-SEB-CSW <br> ) <br> ) <br> ) <br> ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

On August 19, 2022, Plaintiffs Mona Capuano ("Ms. Capuano"), Johnny Custer ("Mr. Custer"), Elizabeth Goad ("Ms. Goad"), and Alison Mele ("Ms. Mele") (collectively "Plaintiffs") sued their employer, Defendant Eli Lilly & Company ("Lilly"), alleging that by requiring Plaintiffs to be vaccinated against COVID-19, Lilly committed religious discrimination, in violation of 42 U.S.C. § 2000e, *et seq*. Plaintiffs filed an Amended Complaint on November 23, 2022. ECF No. 17. On January 6, 2023, Lilly filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. ECF No. 27. For the reasons explained below, the Motion to Dismiss is **GRANTED**.

1

## I. FACTUAL BACKGROUND

Before reciting the facts, we pause briefly to address Lilly's references to factual allegations found in Plaintiffs' first complaint but omitted in their Amended Complaint. An "amended plead[ing] supersedes the original," *Pirant v. U.S. Postal Service*, 542 F.3d 202, 207 (7th Cir. 2008)), so "facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013). *Cf. Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (explaining that a verified complaint retains status equal to an affidavit on summary judgment when a later, amended complaint is filed). Here, Plaintiffs' Amended Complaint supersedes their original, so we review only those allegations provided in their more recent Amended Complaint.

For purposes of the Motion to Dismiss, we accept Plaintiffs' well-pleaded factual allegations as true, while omitting any "legal conclusion[s] couched as . . . factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. Lilly's Vaccine Mandate

In August 2021, Lilly announced a company-wide vaccine mandate, which required all its employees to receive the COVID-19 vaccine by November 15, 2021. Under this policy, religious and medical exemptions were available to employees who submitted a request before September 10, 2021. Otherwise, employees who chose not to get vaccinated by the deadline could anticipate being required to separate from the company on November 16, 2021, and forfeiting their bonus and Lilly share.

According to Lilly's "Frequently Asked Questions" bulletin, employees who were granted an accommodation (and therefore remained unvaccinated) were required to wear a mask and undergo weekly testing, "depending on the number of consecutive days they w[ould] be working at a Lilly facility." Am. Compl. ¶ 18, ECF No. 17. Similarly, "Field Employees"—presumably employees that "work[ed] at a Lilly facility"—with an accommodation were instructed to "follow the direction of the customer and/or healthcare facility they [we]re visiting . . . ." *Id.*

### B.     The Plaintiffs

Except for the differences outlined below, each Plaintiff was (and still is) a Lilly employee at the time Lilly announced its vaccine mandate. Each applied for a religious accommodation, and each was granted a "temporary accommodation," whereby Plaintiffs had until November 15, 2021, to secure a non-customer-facing position in the company or risk their employment being terminated. In granting only "temporary" accommodations, Lilly explained that each Plaintiff's "responsibilities required [him or her] to engage regularly and/or directly with customers," thereby "pos[ing] an undue hardship for [Lilly] and its customers." *Id.* ¶¶ 23, 35, 51, 65.[1] After Plaintiffs unsuccessfully sought assignment to a remote position before the November deadline, they received the COVID-19 vaccine, and today, they remain employed by Lilly in the same or in similar positions.

---

[1] Plaintiffs believe that Lilly's reasoning is inconsistent with its stated policy because they did "not interact with any of [Lilly's] facilities or locations on a routine basis" and otherwise agreed to continue wearing a mask and taking COVID-19 tests. Am. Compl. ¶¶ 24, 36, 52, 66. However, that Plaintiffs did not ordinarily work at an undefined "Lilly facility" suggests nothing about whether they had customer-facing roles.

### 1. Ms. Capuano

Ms. Capuano is currently a Senior Executive Sales Representative in the Neuroscience Division who began working at Lilly in July 1997. She submitted her religious exemption request on September 7, 2021, and Lilly responded the next day with a request for additional information. On September 29, 2021, Lilly temporarily approved Ms. Capuano's request. Before her temporary accommodation expired, she applied for twenty-four remote positions, hoping to secure a non-customer facing role and avoid termination. Ms. Capuano ultimately was not selected for any of the remote positions, so she elected to receive the COVID-19 vaccine on November 9, 2021. "When asked for feedback on applying for an accommodation, [Ms.] Capuano stated that she experienced physical and mental/emotional pain and suffering as a result" of Lilly's actions. *Id.* ¶ 31.

### 2. Mr. Custer

Mr. Custer is a Senior Executive Sales Representative in the Neuroscience Division who began working for Lilly in May 2001. He submitted a religious accommodations request on September 8, 2021, and received a temporary approval on September 29, 2021. Between September 30, 2021, and October 29, 2021, Mr. Custer applied for thirteen remote positions but was not selected for any of them. On November 2, 2021, Mr. Custer contracted COVID-19 and underwent a monoclonal antibody infusion to reduce the risks posed by the virus. He eventually elected to receive the COVID-19 vaccine on February 7, 2022.

### 3. Ms. Goad

Ms. Goad has worked for Lilly since August 2000. At the time the vaccine mandate was enacted, Ms. Goad was a Field Reimbursement Manager, but she currently holds title

4

of Associate Director, BioMedicines Field Reimbursement. She submitted her religious accommodations request on September 9, 2021, in response to which Lilly requested additional information on September 10, 2021. After supplementing her request, Lilly granted Ms. Goad a temporary approval, and before her temporary approval expired, she applied for three remote positions, but was not selected for any. She eventually elected to receive the COVID-19 vaccine on November 12, 2021.

    4.    <u>Ms. Mele</u>

Ms. Mele has worked for Lilly since January 2007 and currently occupies the position of Executive Sales Representative in the Neuroscience Division. She submitted her religious accommodation request on September 7, 2023, and received a temporary accommodation on September 29, 2021. Ms. Mele emailed Lilly on or about October 6, 2021, requesting guidance in finding a non-customer facing role. Apparently, "the links provided to [Ms.] Mele included customer facing positions." *Id.* ¶ 69. We have not been informed as to whom Ms. Mele corresponded or which positions Ms. Mele deemed "customer facing." Between September 29, 2021, and November 4, 2021, Ms. Mele applied for eight remote positions but received no offer for any of them. She received the COVID-19 vaccine on November 14, 2021.

    **C.**    **This Action**

Plaintiffs filed this cause of action on August 19, 2022, Compl., ECF No. 1, alleging that Lilly discriminated against them on the basis of their religious beliefs by "forc[ing]" them to take the COVID-19 vaccine in violation of Title VII of the Civil Rights Act of 1964. On October 13, 2022, Lilly responded with a Motion to Dismiss, ECF No. 11, which

5

this Court denied as moot on May 4, 2023, ECF No. 38, after Plaintiffs filed an Amended Complaint on November 23, 2022, ECF No. 17. The Amended Complaint realleges that Lilly discriminated against them by "failing to engage in the interactive process in good faith and denying their reasonable accommodations." Am. Compl. ¶ 77, ECF No. 17. It adds that Lilly discriminated against Plaintiffs by conditioning continued employment upon compliance with the vaccine mandate and that Lilly's "quid pro quo" harassment contributed to a hostile work environment. *Id.* ¶ 76. Lilly has moved to dismiss the Amended Complaint, ECF No. 27, which motion has been fully briefed and is now ripe for ruling.

## II. LEGAL ANALYSIS

Lilly moves to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim. We first address whether we have subject matter jurisdiction because, without it, we have no authority to decide the merits of this dispute. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007).

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rules of Civil Procedure 12(b)(1), a federal court must dismiss an action where it lacks subject matter jurisdiction. Standing is "the threshold question in every federal case" that not only "imports justiciability," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), but also comprises "an essential component of [Article III's] case-or-controversy requirement," *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing *Lujan v. Defs of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs "must have (1) suffered an injury in fact, (2)

6

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

When a party asserts that a plaintiff has not "sufficiently alleged a basis of subject matter jurisdiction," we "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)). Nonetheless, "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* (alterations omitted) (citing *Lujan v. Defs of Wildlife*, 504 U.S. 555, 561 (1992)).

"[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id*. at 174. To determine whether a plaintiff has stated a plausible claim, courts (1) "first identif[y] the well-pleaded factual allegations by discarding the pleadings that are 'no more than conclusions' and (2) then determine[ ] whether the remaining well-pleaded factual allegations 'plausibly give rise to an entitlement of relief.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

At issue here is the injury-in-fact element of standing. A plaintiff must show that he or "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Prosser v. Becerra*, 2 F.4th 708, 713 (7th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). A concrete injury must be " '*de facto*'; that is, it must actually exist." *Spokeo, Inc.*, 578 U.S. at 340 (italics in original).

While some injuries, such as physical or monetary harms, readily qualify as concrete, less tangible injuries generally do not satisfy the concrete injury requirement. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021). Concrete, intangible injuries typically include those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* The Supreme Court has recognized some clear examples of such intangible injuries as reputational harms, disclosure of private information, intrusion on seclusion, and harms specified in the Constitution. *Id.* The alleged injury need not share "an exact duplicate in American history and tradition," but federal courts may not engineer "an open-ended invitation . . . to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

Congress may also confer statutory rights, but a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute . . . purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. Title VII, relevant here, makes it unlawful for an employer to "intentionally discriminat[e] against an employee based on the employee's religion." *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) (citations omitted); 42 U.S.C. § 2000e-2(a)(1). To satisfy the constitutional standing requirements under Title VII, the plaintiffs "must show that [they] w[ere] personally injured by the defendant's alleged discrimination and that [their] injury will likely be redressed by the requested relief." *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 668 (7th Cir. 1996). However, "[a] plaintiff who was not injured by a challenged employment practice—even an objectionable one—has no ground to complain, whether the theory be disparate impact or any other." *Welch v. Eli Lilly & Co.*, 585 F.App'x 911, 913 (7th Cir.

8

2014); *see also Butler v. Consolidated Rail Corp.*, No. 98-3344, 2000 WL 217537, at *2 (7th Cir. Feb. 22, 2000) ("To prevail on either his Title VII disparate treatment claim or his § 1981 claim, [Plaintiff] must prove that he has been the victim of intentional discrimination.").

The injuries contemplated by Title VII derive from an employer's intentional discrimination, but they stop short of encompassing circumstances when employees "simply dislike or disagree with [the] terms of employment because of [their] religious beliefs." *Ananias v. St. Vincent Medical Group, Inc.*, No. 1:22-cv-1723-RLM-MPB, 2022 WL 17752208 (S.D. Ind. Dec. 19, 2022) (citing *Porter*, 700 F.3d at 954 ("[N]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." (internal quotations and alterations omitted))).

In the vaccination context, many courts have already rejected arguments that employer vaccine policies unlawfully harmed or coerced employees. *E.g.*, *Bridges v. Houston Methodist Hospital*, 543 F.Supp.3d 525, 528 (S.D.Tex. 2021), *aff'd sub nom. Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) (no coercion harm when employee could "freely choose to accept or refuse the COVID-19 vaccine"); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 2:21-cv-105, 563 F.Supp.3d 633, 644 (E.D.K.Y. Sep. 24, 2021) (noting that "no [p]laintiff in this case is being forcibly vaccinated . . . . Rather, these [p]laintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice."), *reconsideration denied*, No. CV 21-105-DLB-EBA, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021); *see also Klaassen v.*

9

*Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (rejecting injunction pending appeal because students "who d[id] not want to be vaccinated [could] go elsewhere").

Recently, one of our judicial colleagues in this district issued a ruling in a case similar to ours in which a vaccinated employee sued her employer under Title VII after it declined her request for a religious exemption. *Ananias*, 2022 WL 17752208, at *4. In *Ananias*, the plaintiff chose to take the COVID-19 vaccine before her employer's vaccine policy became effective, and her work ultimately continued uninterrupted. *Id.* at *1. When later she claimed religious discrimination, the Court determined that she had not alleged an injury-in-fact because she "already made the choice to get vaccinated" and did not otherwise establish that she suffered an injury. *Id.* at *4. Despite Title VII's authorization of compensatory and punitive damages for nonpecuniary injuries, the Court concluded that without an injury-in-fact these remedies remained unavailable to the plaintiff. *Id.* at *5.

Much like the claimed injuries in *Ananias*, Plaintiffs' injuries, as alleged here, do not pass muster under the standing requirements imposed by Article III. Plaintiffs assert no tangible injury that constitutes a concrete injury. Even the assertion by Ms. Capuano that she "experienced physical and mental/emotional pain and suffering" is unavailing, as it models the kind of "quintessential abstract harms that are beyond [the court's] power to remedy." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2022). Nor have Plaintiffs demonstrated how Lilly's vaccination policy subjected them to any intangible harm traditionally recognized in American courts. *TransUnion LLC*, 141 S.Ct. at 2213.

Neither does pleading a violation of Title VII provide recourse because each of the Plaintiffs ultimately chose to become vaccine compliant, and they do not claim to have suffered an employment-related loss. *Cf. Norris v. Stanley*, 73 F.4th 431, 434 nn.1–2 (6th Cir. 2023) (standing conferred by disciplinary consequences employees faced when they chose not to comply with employer's vaccine mandate). In fact, Plaintiffs have not elaborated on their barebones allegation that they were "harmed as a result of Defendant's actions" by referencing any supporting factual allegations. Am. Compl. ¶¶ 32, 44, 59, 74, ECF No. 17. In pleading nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Plaintiffs have failed to show that they suffered any harm at all. *Iqbal*, 556 U.S. at 662. A concrete injury "must actually exist," and Plaintiffs have not shown this to be the case here. *Spokeo*, 578 U.S. at 340.

Hedging their bets by relying on an unsigned, unpublished Fifth Circuit decision, Plaintiffs respond that Lilly's vaccination policy coerced them into getting vaccinated, thereby subjecting them to irreparable injury. Pls.' Resp. 16, ECF No. 33; *see Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022). In *Sambrano*, United Airlines employees were forced to choose between either receiving the COVID-19 vaccine or taking an indefinite unpaid leave. *Id.* at *2. A two-judge majority on the Fifth Circuit panel concluded that the vaccine policy warranted injunctive relief based on irreparable harm that was "ongoing and [could not] be remedied later: they [we]re actively being coerced to violate their religious convictions." *Id.* at *6.

Plaintiffs' reliance on *Sambrano* is misplaced here for several reasons. Not only has the Seventh Circuit previously addressed *Sambrano*'s non-precedential value, *Halczenko*

11

*v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022), but, as Plaintiffs readily admit, a preliminary injunction demands a different kind of injury than Article III standing: to wit, a showing of irreparable harm. Pls.' Resp. 12, ECF No. 33. *See Ananias*, 2022 WL 17752208, at *4 (citing *Marciano v. de Blasio*, 589 F.Supp.3d 423, 431 n.9 (S.D.N.Y. 2022) ("[E]stablishing that there is a substantial threat of irreparable injury on a motion for preliminary injunction is a much taller task than showing injury-in-fact to survive a motion to dismiss."). Though Plaintiffs acknowledge this distinction, their restated contention that they "suffer[ed] the irreparable harm prevented in *Sambrano*" ignores it. Pls.' Resp. 16, ECF No. 33.

Plaintiffs also have overlooked another critical distinction: courts reviewing preliminary injunctive relief—including the Fifth Circuit in *Sambrano*—"distinguish plaintiffs who have already been vaccinated." *Ananias*, 2022 WL 17752208, at *4 (citing *Sambrano*, 2022 WL 486610, at *9). Indeed, the Court in *Sambrano* explicitly narrowed its discussion to the two plaintiffs who were actively facing the "impossible choice" between their religious beliefs and the loss of income from unpaid leave. 2022 WL 486610, at *3 n.6. In making this distinction, the Fifth Circuit's preliminary injunction shielded plaintiffs from "ongoing coercion." *Id.* at *9. But once an employee decided whether to comply with the employer's vaccine policy, the active threat of an "impossible choice" ended, and any lingering harm "c[ould] be remedied through backpay, reinstatement, or otherwise." *Id.* at *7. "After all, the entire point of Title VII's remedial scheme is to return the employee to the *status quo* and to compensate her (as closely as possible) for all damages that stem from the adverse employment action." *Id.* at *6 (italics in original).

Many courts, including our Seventh Circuit, have similarly concluded that once the deadline for compliance passes, plaintiff-employees cannot successfully establish an irreparable harm. *E.g.*, *Halczenko*, 37 F.4th at 1326 (no irreparable harm when doctor already chose not to comply with employer's vaccine requirement and was fired); *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) ("[A]s the deadline for being vaccinated has passed, the appellants cannot point to an 'impossible choice' as a special factor here; they have already made their choices."); *Donovan v. Biden*, 603 F.Supp.3d 975, 982 (E.D. Wash. May 12, 2022) (vaccinated plaintiffs could not establish actual or imminent harm because they had already complied with vaccine requirements and did not face any potential adverse employment actions); *Andre-Rodney v. Hochul*, 618 F.Supp.3d 72, 76 n.3 (N.D.N.Y. 2022) (original plaintiffs who either retired or received the COVID-19 vaccine and returned to work "no longer ha[d] standing," thereby mooting their claims); *Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780, at *18 (M.D. Fla. Dec. 30, 2022) (finding no irreparable harm of an impossible choice where plaintiffs already made their choice not to comply with vaccine mandate and were fired).

Our plaintiffs chose to abide by Lilly's vaccine mandate, and, according to their allegations, their work respectively continued without interruption.[2] From these facts, it is clear that Plaintiffs have not plausibly alleged a concrete injury, tangible or intangible, over which the court has jurisdiction in the form of the power to redress. Specifically, they have

---

[2] Mr. Custer apparently did not receive the COVID-19 vaccine until February 7, 2022, almost three months after Lilly's November 15th deadline, but he has not alleged that any disruption in his employment or pay occurred during this interim period.

not alleged that Lilly's actions caused them any deprivation of pay or benefits or that they suffered any other monetary losses compensable under Title VII. *Ananias*, 2022 WL 17752208, at *5. Plaintiffs' policy compliance, coupled with their failure to articulate actual injuries, negates their purported injury-in-fact and renders them without standing to sue. Without subject matter jurisdiction, we cannot reach the merits of this case and must dismiss their lawsuit. Fed. R. Civ. P. 12(h)(3).

### III.   CONCLUSION

Defendant's Motion to Dismiss, ECF. No. 27, is hereby **GRANTED** and Plaintiffs' Amended Complaint, ECF. No. 17, is **DISMISSED** without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

It has also come to the Court's attention that a party's name is misspelled on the docket. The Clerk of the Court is ordered to correct Defendant's name to "Eli Lilly & Company."

IT IS SO ORDERED.

Date:   9/5/2023

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kara Elizabeth Cooper
Winston & Strawn/Chicago
kecooper@winston.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Taylor Jon Ferguson
Biesecker Dutkanych & Macer, LLC
tferguson@bdlegal.com

Sarah Kreger
Winston & Strawn/Chicago
skreger@winston.com

David D. Leishman
MCGUIRE WOODS LLP (Chicago)
dleishman@mcguirewoods.com

Katharine P Lennox
McGuireWoods LLP
klennox@mcguirewoods.com

Peter A. Milianti
MCGUIRE WOODS LLP (Chicago)
pmilianti@mcguirewoods.com

Benjamin M. Ostrander
Winston & Strawn/Chicago
bostrander@winston.com

Michael Ross Phillips
McGuireWoods LLP
mphillips@mcguirewoods.com

Michael P. Roche
WINSTON STRAWN LLP
mroche@winston.com